UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BETTY DAVIS,                                         Case No. 1:14-cv-293

       Plaintiff,                             Beckwith, J.
                                                 Bowman, M.J.
   v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Betty Davis filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. For the reasons explained below, I conclude that this case should be AFFIRMED because the finding of non-disability is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In November and December 2010, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") alleging a disability onset date of January 9, 2008 due to physical and mental impairments. (Tr. 230-36, 237-242). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On November 18, 2011 an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 37-73). At the hearing, the ALJ heard testimony from Plaintiff and Robert Bond, an impartial vocational expert. On

December 13, 2012, ALJ Anne Shaughnessy denied Plaintiff's application in a written decision. (Tr. 14-30).

The record on which the ALJ's decision was based reflects that Plaintiff was 48 years old at the time of the administrative hearing and at the time the ALJ issued her decision. (Tr. 11, 37, 232). She attended school through ninth grade, and her past work includes jobs as a customer service representative, a cook in a nursing home, and an assembler in a bag factory. (Tr. 261, 285). She now alleges disability based on leg, back and knee pain, as well as fibromyalgia and migraine headaches.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia, degenerative joint disease of left knee, and depression." (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work, with the following limitations:

> She can occasionally climb, kneel, crouch, and crawl. Further, she is capable of performing simple, routine tasks.

(Tr. 20).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff could not perform her past relevant work, other jobs existed in significant numbers Plaintiff could perform, including such jobs as small parts assembler, checker, document preparer. (Tr. 29). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. (Tr. 30).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to find that Plaintiff's migraine headaches, degenerative disc disease and anxiety disorder constitute(s) severe impairments; 2) failing to give controlling weight to the findings of Plaintiff's treating physicians; and 3) improperly evaluating Plaintiff's credibility. Upon careful review, the undersigned finds that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that

3

finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . ... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. Specific Errors**

*1. Step-two findings*

Plaintiff's first assignment of error asserts that the ALJ committed reversible error because she did not find her migraine headaches, lower back pain and anxiety to be severe impairments or consider what effect the impairment would have on her ability to work.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir.1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "de minimus hurdle" in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988). *See also Rogers v. Commissioner,* 486 F.3d 234, 243 n. 2 (6th Cir.2007).

Here, at step-two of the sequential evaluation, the ALJ found Plaintiff's fibromyalgia, degenerative joint disease of left knee, and depression to be severe impairments. Plaintiff contends, however, that the ALJ should have determined that Plaintiff's migraine headaches,

5

lower back pain and anxiety were also severe impairments and also should have considered the cumulative effects of these impairments when determining her functional limitations.

With respect to Plaintiff's headaches, the ALJ found that the record contained inconsistent reports from Plaintiff about the frequency and severity of her headaches; Plaintiff allegedly had been experiencing debilitating headaches for ten to fifteen years, yet worked for many of those years. She also alleged that her headaches were not well-controlled by medication, yet was never referred to a neurologist or other specialist for other treatment. (Tr. 18, citing Tr. 285, 462, 562, 569, 960-61). In light of the foregoing, the ALJ determined that Plaintiff's headaches were not a severe impairment.

Plaintiff asserts, however, that this finding is not substantially supported by the record. Notably, Plaintiff argues that she was diagnosed with migraine headaches by several treating physicians and by several attending emergency room physicians. Plaintiff further noted that she has been prescribed Propranolol by two physicians for her migraine headaches. Plaintiff also notes that medical records submitted post-hearing to the appeals council include an MRI of the brain indicating findings consistent with white matter disease. (Tr. 1049-1057 ). Plaintiff was also seen in the emergency room in November 2012 and was diagnosed with occipital neuralgia. *Id.* According to Plaintiff, Dr. Santhanam indicated this condition contributed to Plaintiff's headaches. (Tr. 1049-1057, 1061).

It is well established, however, that the mere existence of impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security,* 257 F. App'x 923, 930 (6th Cir.2007) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988)). When the record does not

contain any reports, doctor statements or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir.2001) (citing *Higgs,* 880 F.2d at 860; *Maloney v. Apfel,* No. 99–3081, 2000 WL 420700 (6th Cir. Apr.14, 2000); *Foster v. Sec'y of Health & Human Servs.,* No. 88–1644, 1990 WL 41835 (6th Cir. Apr.11, 1990)). Such is the case here.

Next, in finding that Plaintiff's low back pain was not a severe impairment, the ALJ noted that an MRI of Plaintiff's lumbar spine in 2012 showed only scattered discogenic and facet disease with no significant neural compression at any level, and that an EMG of Ms. Davis's legs was "entirely normal." (Tr. 18, citing Tr. 342, 844-45). Likewise, the state agency physicians who reviewed the file did not find any lower back severe impairments. (Tr. 81, 112).

Plaintiff asserts, however, that Dr. Perez's treatment notes indicate that Plaintiff was experiencing low back pain due to degenerative disc disease. (Tr. 850, 852). Dr. Perez also treated Plaintiff with epidural injections. Such evidence, however, fails to indicate that this impairment significantly limited Plaintiff from performing basic work activities. *See Despins*, 257 F. App'x at 930 (mere existence of impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time).

Last, Plaintiff contends that the ALJ erred in failing to find her anxiety to be a severe impairment. In support of this contention, Plaintiff points to treatment notes from an attending psychiatrist (Dr. Ramirez) which indicate that Plaintiff suffered from both depression and anxiety. (Tr. 682-719). With respect to Plaintiff's anxiety, the ALJ noted that Plaintiff's

7

testimony at the administrative hearing did not allege that she sufferance from panic attacks or other anxiety-related symptoms, and to the extent Plaintiff did have an anxiety disorder, it appeared to be well-controlled by medication. (Tr. 18, citing Tr. 43, 46, 62-64, 688, 883-84). Plaintiff again fails to point to any functional limitations associated with this impairment.

More importantly, even if the ALJ erred in not finding Plaintiff's migraine headaches, low back pain, and/or anxiety to be "severe" limitation(s), such error was harmless. This is because the regulations require that if one "severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.,* No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D.Ohio 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). Here, as further discuss below, the ALJ's decision indicates that she properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining her RFC. Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

    *2. Evaluation of the Opinion Evidence*

Plaintiff's second assignment of error asserts that the ALJ improperly discounted the findings of Plaintiff's treating physicians, Dr. Armentrout and Dr. Ramirez.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable

8

clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); but see *Tilley v. Comm'r of Soc. Sec.,* No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under Blakely and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see also *West v. Comm'r Soc. Sec. Admin.,* 240 Fed. Appx. 692, 696 (6th Cir.2007) (citing *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 536 (6th Cir.1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. See *Anderson v. Comm'r Soc. Sec.,* 195 Fed. Appx. 366, 370 (6th Cir.2006)

9

("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); see also *Kidd v. Comm'r of Soc. Sec.,* 283 Fed. Appx. 336, 340 (6th Cir.2008) (citing *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir.1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

*A. Dr. Armentrout*

The record indicates that Plaintiff treated with her family doctor, Dr. Armentrout from October 2010 through October 2011. Dr. Armentrout primarily treated Plaintiff for fibromyalgia and migraine headaches. Dr. Armentrout completed several "Basic Medical Forms" for the Butler County Department of Jobs and Family Services. Notably, in October 2010, Dr. Armentrout opined that Plaintiff could not stand/walk more than two hours in an eight-hour workday or more than ten minutes at a time; could not sit for more than two hours in an eight-hour workday or more than 10 minutes at a time; could lift up to only ten pounds occasionally; was markedly limited in pushing/pulling and bending; and was extremely limited in repetitive foot movements. (Tr. 532- 33). And in March 2011, he opined that Plaintiff could stand/walk for up to three hours in an eight-hour workday and 30 minutes at a time; could sit for up to four hours in an eight-hour workday, and up to one hour at a time; could lift up to only five pounds occasionally; was markedly limited in pushing/pulling and repetitive foot movements; and was extremely limited in bending. (Tr. 534-36). Dr. Armentrout based his findings on a "physical

10

exam," "direct observation," "various evaluations to exclude other diagnosis" and "blood work." (Tr. 532-536).

ALJ Shaughnessy gave little weight to Dr. Armentrout's opinions, explaining, among other things, that they lacked explanation and supporting objective evidence; were inconsistent with one another; were unsupported by his treating notes; and were inconsistent with other record evidence, including the opinion of another treating physician, Ashok Kejriwal, M.D., who, in December 2010, opined in response to the same questions as Dr. Armentrout that Plaintiff had no standing/walking, sitting, or lifting/carrying restrictions. (Tr. 26, citing Tr. 669-670). The ALJ's findings comport with agency regulations and controlling law.

Notably, the ALJ properly discounted Dr. Armentrout's findings because they were not consistent with his treatment notes. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). thus, the decision is substantially supported in this regard.

Furthermore, Courts in this District have regularly agreed with ALJs who have often found such vague, broad-based explanations to be lacking. *See, e.g., McClanahan v. Astrue*, 2011 WL 672059 (S.D. Ohio Feb. 16, 2011) (Barrett, J.) ("the essential problem with the four pages of forms that make up [the doctor's] opinion is that it is entirely conclusory. Other than stating that his observations are based on physical exams and history, [the doctor] gives no

11

indication of what evidence his opinion is based on"); *Allen v. Astrue*, No. 10-213 (S.D. Ohio Aug. 4, 2011) (Ovington, MJ) (ALJ reasonably rejected treating physician's opinion which consisted of "two-page form . . . lacking in explanation or reference to supporting medical evidence," which "provided no reasoned analysis or reference to medical evidence in support of his opinion" and which did "not provide any meaningful insight into why he believed [the claimant] was so restricted"); *Freudenberger v. Astrue*, 2011 WL 1114407 (S.D. Ohio Feb. 28, 2011) (Bowman, MJ) ("where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions"). Here, Dr. Armentrout stated only that his findings based on "physical exam, observation and various evaluations to exclude other diagnoses." (Tr. 532). He did not point to any specific clinical findings or medical evidence in support of his findings. Furthermore, as noted by the Commissioner, a review of Dr. Armentrout's treating notes shows little support for his extreme conclusions, and reflect instead largely normal objective findings and appointments either for medication refills or treatment for other non-disabling issues, such as colds/sore throats, ankle pain, and a wound on Ms. Davis's left thigh. (Tr. 482-536, 720-32). In light of the foregoing, the undersigned finds that the ALJ's decision is substantially supported in this regard.

    *B. Dr. Ramirez*

Plaintiff further asserts that the ALJ failed to give controlling weight to the findings of Dr. Ramirez, Plaintiff's treating psychiatrist. The record indicates that Plaintiff was first seen at Transitional Living in May 2011, where she was treated by Dr. Ramirez and was also seen by nurse practitioners.

Plaintiff saw Dr. Ramirez for the first time in August 2011; and approximately every ninety days thereafter to access Plaintiff's response to medications. In September 2011 and January 2012, Dr. Ramirez, opined, *inter alia*, that Plaintiff was markedly limited in performing activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; completing a normal workday without interruption from psychologically based symptoms; and traveling in unfamiliar places or using public transportation. (Tr. 664-65, 786-90).

The ALJ assigned "little weight" to Dr. Ramirez's findings. In so concluding, the ALJ noted that that Dr. Ramirez's conclusions were inconsistent with Ms. Davis's own reports about her symptoms and activities and his observations from their most recent session in August 2012, in which he noted that Ms. Davis was doing well with her current medications; was coping adequately with life stressors; showed a stable mood; and was not experiencing any side effects from her medications, such as sleep disturbance or loss of appetite. (Tr. 20, 26, citing Tr. 883-84). The ALJ found that Dr. Ramirez's findings were "unsupported by his clinical notes and or other medical evidence." As such, the ALJ determined that "limited weight can be given to his assessment." (Tr. 26).

Plaintiff argues that the ALJ improperly discounted Dr. Ramirez's findings due to lack of objective findings. Notably, Plaintiff contends that Dr. Ramirez, as plaintiff's treating physiatrist, possess expertise in the diagnosis, treatment and evaluation of Plaintiff's mental impairments. The undersigned recognizes that psychiatric impairments "are not as readily amenable to substantiation by objective laboratory testing as a medical impairment." *Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989). As such, the diagnostic

13

techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine and interviews are clearly an acceptable diagnostic technique in the area of mental impairments. *Id. See also Warford v. Astrue,* No. 09–52, WL 3190756, at *6 (E.D.Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

However, as noted above, Dr. Ramierz treatment notes indicated that Plaintiff was doing well with her current medications; was coping adequately with life stressors; showed a stable mood; and was not experiencing any side effects from her medications, such as sleep disturbance or loss of appetite. (Tr. 20, 26, citing Tr. 883-84). As such, the ALJ properly discounted his extreme findings. See *Anderson v. Comm'r Soc. Sec.,* 195 Fed. Appx. 366, 370 (6th Cir.2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); see also *Kidd v. Comm'r of Soc. Sec.,* 283 Fed. Appx. 336, 340 (6th Cir.2008) (citing *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir.1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Furthermore, the ALJ found that Dr. Ramirez's conclusions were inconsistent with other record evidence, including Ms. Davis's testimony that she had no issues with short-term memory (Tr. 46), and an evaluation by consulting psychologist Andrea Johnson, Psy.D. (Tr. 538-43), who found, among other things, that Ms. Davis had adequate short term memory. Dr. Ramirez, on the other hand, inexplicably concluded that Ms. Davis had memory deficits. (Tr. 664). Further, Dr. Ramirez's conclusions were also inconsistent with the assessments of two

14

state agency reviewing psychologists (whose assessments the ALJ gave great weight, Tr. 25), who assessed that Ms. Davis had only mild or moderate functional limitations, and could perform unskilled work. (Tr. 81, 84-86, 112- 13, 115-17). The ALJ's findings are substantially supported in this regard.

In sum, the undersigned finds that the ALJ properly weighed the opinion evidence of record and gave "good reasons" for her findings as required by agency regulations and controlling law.

*3. Credibility Assessment*

Plaintiff's final assignment of error asserts that the ALJ's "RFC determination lacks proper evidentiary support and is based upon selective evidence recitation." (Doc. 9 at 23). Specifically, Plaintiff asserts that the ALJ "cherry picked evidence" and improperly substituted her own personal opinion in discounting the findings of Plaintiff's treating physicians and in assessing Plaintiff's credibility. Plaintiff's contentions lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is

absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985).

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392. Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making her credibility determination.

Furthermore, an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, however, she is not permitted to make her own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute her own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.,* No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze,* 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel,* 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.,* 892 F.Supp. 183, 187–88 (E.D.Mich.1995)). *See also Rosa v. Callahan,* 168 F.3d 72, 78–79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical

opinion."); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Plaintiff argues that the ALJ cherry picked evidence and pulled out isolated statements to bolster her non- disability determination. Notably, in finding Plaintiff to be less than credible, the ALJ cited to emergency room reports that showed Ms. Davis had, at various times, gone swimming and performed yard work, both of which are inconsistent with Plaintiff's complaints of pain and functional limitations. (Tr. 22). In making this finding, Plaintiff asserts that the ALJ improperly disregarded several additional visits she made to the emergency room for actual treatment of her conditions (Doc. 9 at 23-24). However, the ALJ's credibility finding did not rest solely on this evidence, the ALJ also considered other credibility factors, including Plaintiff's failure to follow her doctor's advice to exercise, failure to treat consistently with a rheumatologist for her Fibromyalgia as recommend by her family physician, delayed treatment for her knee pain, as well as her limited mental health treatment.

With respect to Plaintiff's knee impairment, the ALJ noted that in 2008 the record indicates that Plaintiff had knee swelling after a fall, yet Plaintiff did not seek any knee treatment again until 2012 when she visited three different emergency rooms within a two month span. (Tr. 23, citing Tr. 408, 794-812, 815-41). *See Johnston v. Astrue*, 10-444 (S.D. Ohio Aug. 18, 2011) (Bowman, MJ) ("a failure to seek treatment for a condition is a factor that may be considered in assessing credibility"). As detailed by the Commissioner and the ALJ, although Plaintiff complained of pain during these visits, the objective evidence showed full range of motion and normal deep tendon reflexes with no loss of sensation or tingling. (Tr. 23, citing Tr. 795, 799, 831-32). *See Daniels v. Comm'r of Soc. Sec.,* 2011 WL 2110145 (S.D.

17

Ohio May 26, 2011) (Graham, J) ("normal neurological findings or other results of objective testing are not completely unrelated to whether a claimant suffers from disabling pain; 'as a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration'") (quoting *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 732 (N.D. Ohio 2005)). The ALJ further noted that although Plaintiff alleged depression since 2000, she did not seek any mental health treatment until 2011. Thereafter, treatment notes from 2011 and 2012 often indicated a "normal mood and affect and to display evidence of no psychological symptoms or evidence of anxiety." (Tr. 24, citing Tr. 381, 514-16, 554, 611, 728-30).

In light of the foregoing, the undersigned finds that the ALJ engaged in the requisite narrative discussion of her RFC assessment and credibility findings and properly considered s how the evidence supported such conclusions, cited to specific medical facts, and cited to nonmedical evidence, including Plaintiff's testimony and daily activities.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                                       /s Stephanie K. Bowman  
                                                      Stephanie K. Bowman  
                                                      United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BETTY DAVIS,

    Plaintiff,

v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:14-cv-293

Beckwith, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).